UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

Fayetteville Division

| | |
|---|---|
| 1.   METRO BUILDERS SUPPLY, INC.,<br><br>and<br><br>2.   METRO BUILDERS SUPPY<br>     OF ROGERS, INC.<br><br>               Plaintiffs,<br><br>          v.<br><br>1.   CITY OF LOWELL, ARKANSAS,<br>     **Serve:  216 N. Lincoln St.<br>              Lowell, Arkansas  72745**<br><br>2.   CHRIS MOORE, individually and in<br>     his official capacity as<br>     Mayor of the City of Lowell,<br>     **Serve:  216 N. Lincoln St.<br>              Lowell, Arkansas  72745**<br><br>3.   ELIZABETH ESTES, individually and in<br>     her official Capacity as City Clerk of the<br>     City of Lowell,<br>     **Serve:  216 N. Lincoln St.<br>              Lowell, Arkansas  72745**<br><br>4.   KAREN DAVIS, individually and in her<br>     official capacity as Development Director<br>     of the City of Lowell,<br>     **Serve:  216 N. Lincoln St.<br>              Lowell, Arkansas  72745**<br><br>5.   DANIEL ELLIS, individually and in his<br>     official capacity as City Engineer,<br>     **Serve:  901 N. 47th Street, Ste 400<br>              Rogers, Arkansas, 72756**<br><br>and | Case No. 5:23-cv-05229-TLB<br><br><br>Jury Trial Demanded |

1

6.  CRAFTON TULL & ASSOCIATES, INC.                    )
    in its capacity as City Engineer for the           )
    City of Lowell,                                    )
    Serve:   **Robert M. Crafton, Reg. Agt.**          )
             **901 N. 47th Street, Ste 200** )
             **Rogers, Arkansas, 72756**               )
                                                       )
                         Defendants.                   )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COME NOW METRO BUILDERS SUPPLY, INC., an Oklahoma corporation, and

METRO BUILDERS SUPPLY OF ROGERS, INC., an Arkansas corporation, by and through their

undersigned counsel, and for their complaint against the CITY OF LOWELL, ARKANSAS, a

first-class city located in Benton County, Arkansas; CHRIS MOORE, individually and in his

capacity as Mayor of the City of Lowell; ELIZABETH ESTES, individually and in her capacity

as City Clerk of the City of Lowell; KAREN DAVIS, individually and in her capacity as

Development Director of the City of Lowell; DANIEL ELLIS, individually and in his capacity as

City Engineer for the City of Lowell; and CRAFTON TULL & ASSOCIATES, INC., in its

capacity as City Engineer for the City of Lowell, state and inform the Court as follows:

### Parties, Jurisdiction, and Venue

1.    Plaintiff Metro Builders Supply, Inc. is a corporation incorporated in and doing

business in the State of Oklahoma, and Plaintiff also owns real estate in the State of Arkansas

(herein referred to as "Metro").

2.    Metro's subsidiary entity, Metro Builders Supply of Rogers, Inc., is a corporation

incorporated in and doing business in the State of Arkansas as "Metro Appliances & More" (herein

referred to as "Metro Appliances").

3.    Metro and Metro Appliances shall collectively be referred to herein as "Plaintiffs".

4.    Defendant City of Lowell, Arkansas (herein the "City") is a first-class city located in

2

Benton County, Arkansas.  The City may be served with process as set forth above.

5.       Defendant Chris Moore (herein "Moore") is the duly elected and currently serving Mayor of the City, and he may be served with process as set forth above.

6.       Defendant Elizabeth Estes (herein "Estes") is the duly elected and currently serving Clerk of the City, and she may be served with process as set forth above.

7.       Defendant Karen Davis (herein "Davis") is the duly appointed and currently serving Development Director of the City, and she may be served with process as set forth above.

8.       Defendant Daniel Ellis (herein "Ellis") was hired by Moore to serve, and upon information and belief still is serving, as the Engineer of the City; he may be served with process as set forth above.

9.       Defendant Crafton Tull & Associates, Inc. (herein "Crafton Tull") is upon information and belief the entity through which Ellis is paid by the City for his services as Engineer of the City and, therefore, is also serving in the capacity of Engineer of the City.  Crafton Tull may be served with process as set forth above.

10.      Jurisdiction and venue are proper in this Court because this civil matter presents federal questions and claims supplemental thereto, and, further, because the real property at issue herein and the defendants are all located or reside in the State of Arkansas, which is within the purview of this Court.  28 U.S.C. §§ 1331, 1367, & 1391(b).

11.      This particular division of this Court is proper because the events leading to the claims for relief arose in Benton County, Arkansas.  28 U.S.C. § 83.

## Facts Common to all Counts

12.      Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

13.      On or about July 9, 2020, Metro purchased the real property located in Benton County,

3

Arkansas that would later become known and was approved by the City as the "Nicolas Place" development.

14.    In the spring of 2015, Presley, Brannon & Associates, Inc., an engineering firm, applied to the City on behalf of Metro for approval of the large-scale development project, "Nicolas Place".

15.    On or about June 1, 2015, the then-mayor of the City executed the final plat for Nicolas Place, which was thereafter recorded at Book 2015, Page 713. A copy of said plat is attached hereto as **Exhibit "1"** and incorporated herein by this reference; said development shall be subsequently referred to herein as the "Nicolas Place Development".

16.    On or about July 29, 2015, the Arkansas Department of Environmental Quality issued a stormwater construction general permit, No. ARR150000 & AR154927, after which Metro began construction of the stormwater detention basin to serve all of the realty in the Nicolas Place Development (herein the "Basin").

17.    On or about January 27, 2016, the building permit for Metro's proposed retail store located at 801 Metro Place in the Nicolas Place Development was issued by the City, and Metro began building its retail structure at that location (herein the "Retail Store").

18.    Part of the Nicolas Place Development included the construction of a private road, known as Metro Place, which runs east-west through the Nicolas Place Development. Although the construction of Metro Place as originally submitted to the City had been approved, in or around March of 2016, the City announced for the first time, and after construction of the Metro Place road was well underway, that a third lane to the public road, Goad Springs Road, which runs north south along the perimeter of Metro's property, would be required as a condition precedent to the issuance of a certificate of occupancy for the Retail Store.

19.    Although this last-minute and leveraged requirement from the City to obtain a

certificate of occupancy for the Retail Store was made without any advance notice to Metro and without the City giving Metro any relief on permitting fees or other costs of compliance, Metro elected to and did comply with the City's requirement of adding a lane to Goad Springs Road, at Plaintiff's exclusive expense.

20.     The widening of Goad Springs Road directly benefitted the City and other businesses whose customers and employees frequent said road.

21.     Thereafter, on or about October 17, 2016, Richard Stone, the then-City Engineer (herein the "Former City Engineer"), inspected the Basin; and on October 25, 2016, on behalf of the City, Richard Stone approved the Basin with no modifications requested.

22.     On or about May 5, 2017, the City issued a certificate of occupancy for the Retail Store.

23.     Metro Appliances has been operating the Retail Store, which includes providing goods and services to the City's residents and employing approximately 75 people, many of whom are residents of the City, since on or about May 8, 2017.

24.     As was contemplated from the beginning of the Nicolas Place Development, Metro, by and through its contractor Eoff & Associates, Inc. (herein "Plaintiff's Contractor"), submitted to the City plans to construct a warehouse for the storage of its inventory at 801 Metro Place (herein the "Warehouse") on or about October 26, 2021.

25.     In or about October 2021, the City requested that Plaintiff's Contractor make certain plan revisions relative to the Basin as part of the submission of plans to construct the Warehouse. Specifically, the City requested minor modifications to help ensure water quality in the Basin.

26.     Those modifications, which required the insertion of orifice containing steel into the Basin to block or reduce leakage (herein the "Modifications"), were implemented into the construction plans that were prepared and submitted to the City by Plaintiff's Contractor and

5

Plaintiff's engineer, Richard Harshfield of Vandersluis Engineering (herein "Plaintiff's Engineer"), on or about November 15, 2021.

27.    The Modifications to the construction plans were subsequently accepted, and the construction plans for the Warehouse were approved by the City on or about November 29, 2021.

28.    The City also issued a building permit for the Warehouse on or about November 29, 2021.

29.    The steel plates contemplated in the Modifications were implemented into the Basin by Metro, Plaintiff's Contractor, and Plaintiff's Engineer in the fall of 2021.

30.    Thereafter, construction of the Warehouse began, which construction was completed by Plaintiff's Contractor in late 2022 or early 2023.

31.    On or about January 27, 2023, Plaintiff's Contractor contacted the City to request that a certificate of occupancy issue for the Warehouse.

32.    The Former City Engineer and Davis advised Plaintiff's Contractor on or about January 27, 2023, and again on February 15, 2023, that three action items remained in order for the City to issue a certificate of occupancy for the Warehouse; namely, (a) adjusting the height of a fire hydrant, (b) completion of landscaping, including seeding of the west graded area, and (c) the "Best Management Practice" (BMP) devices would need to be removed following the completion of landscaping.

33.    Each of the above-referenced action items had been completed by Plaintiff's Contractor by May 18, 2023.

34.    Despite completing the above-referenced action items as requested, the City failed and refused to issue a certificate of occupancy for the Warehouse.

35.    Shortly thereafter, in or about May 2023, the City's Former Engineer was demoted by

Moore, and Moore hired Ellis and/or Crafton Tull instead to serve as the new City engineer(s).

36.    Following his appointment, Ellis and Davis informed Plaintiff's Contractor that there would be additional requirements in order to obtain a certificate of occupancy for the Warehouse; namely, (a) five trees needed to be planted on the south side of the property; and (b) hairline cracking in the concrete sidewalk along the private Goad Springs Road would need to be broken up and removed in those sections, and the concrete repoured.

37.    Plaintiff's Contractor completed the above-referenced additional action items on or before July 20, 2023.

38.    However, on or about May 18, 2023, Ellis, on behalf of the City, also verbally informed Plaintiff's Contractor that the City would *not* be issuing a certificate of occupancy for the Warehouse because the Basin was located in an endangered spring cave recharge area and, thus, as constructed, he believed the Basin violated the Federal Endangered Species Act. 16 U.S.C. § 1531, *et seq.*

39.    Despite requests from Plaintiff's agents, Ellis refused to provide the aforementioned Basin analysis and finding in writing.

40.    Following his initial assessment, and after speaking with Plaintiff's Engineer via phone, Ellis redetermined that the Basin was *not* actually located within an endangered spring cave recharge area; however, Ellis then claimed that the Basin violated the Clean Water Act 33 U.S.C. § 1251, *et seq*, allegedly because it does not presently hold a permanent pool of six feet of water.

41.    Although Ellis has failed and refused to articulate why he believes the Basin allegedly violates the Clean Water Act, it is clear the Basin does not fall within the purview of the Clean Water Act because it is not adjacent to nor indistinguishable from a stream, ocean, river or lake. *See* 33 U.S.C. § 1251, *et seq*; *Sackett v. Env. Prot. Agency,* 143 S.Ct. 1322 (2023).

42.     Further, at different times, Ellis has claimed verbally that the Basin violates an amended City ordinance, the citation of which has yet to be shared by Ellis, Davis, or the City with Metro or Plaintiff's Contractor.

43.     Again, despite both written and verbal requests, which Ellis has acknowledged receiving, Ellis has failed and refused to provide the City's latest Basin requirement, nor any basis therefor, nor any form of a final decision of the City, to Plaintiff's Contractor or the undersigned in writing.

44.     To Metro's knowledge, Ellis has not personally inspected the Warehouse, and at no time have any written notices of inspection or results of inspection been issued to Metro or Plaintiff's Contractor by Ellis.

45.     In an attempt to investigate this situation further, Metro Appliances submitted its properly drafted Freedom of Information Act (herein "FOIA") request for public records to the City, addressed to Estes, on or about July 20, 2023, which request was thereafter confirmed as received by the City. *See* Ark. Code Ann. 25-19-101, *et seq.* Metro Appliances' FOIA request and delivery receipt, along with the follow up letter to the City concerning the same, with certified return receipt attached and email confirming receipt, but to which no substantive response from the City has ever been received, are collectively attached hereto as **Exhibit "2"** and incorporated herein by this reference.

46.     Although, to date, Metro has complied with all the requirements of the City communicated to Plaintiff or its agents in writing concerning the Warehouse, the Basin, and Nicolas Place Development; has paid each of the significant permit and other fees required by the City for the Nicolas Place Development and improvements thereon; has incurred substantial costs associated with constructing the Nicolas Place Development, which construction has and continues

8

to directly and indirectly benefit the City and its businesses and residents; and has tried to communicate numerous times with the City and its agents to obtain information on the latest alleged inadequacies of the Basin which, inexplicably, the City claims is preventing the issuance of a certificate of occupancy for the Warehouse, the City (and its officers and employees) has failed and refused time and again, and continues to fail and refuse, to articulate its requirements in writing; to provide the basis for the recently alleged inadequacies of the Basin and/or the reasoning for refusing to issue a permanent or even a temporary certificate of occupancy for the Warehouse; and to respond in any respect to Metro Appliances' properly submitted FOIA request concerning these matters.

47.     As a direct and proximate result of the City's actions and inaction, Plaintiffs have suffered actual damages and lost profits, and Plaintiffs have also been left without legal remedies as to certain claims.

### Count I
### Violation of Due Process
### (Unconstitutionally Vague Ordinances)

COMES NOW Metro, and, for Count I of its cause of action against the City, Moore, Davis, Ellis, and Crafton Tull, states and informs the Court as follows:

48.     Metro incorporates each of the preceding paragraphs as though fully set forth herein.

49.     Metro has property rights in the Nicolas Place Development, which rights include but are not limited to ownership of the real property on which the Warehouse has been constructed, the real property where the Basin is located, and the Metro Place road.

50.     At all times pertinent hereto, Moore has been the Mayor of the City, and Davis has been the Development Director of the City working under the supervision of the Mayor.

51.     As referenced above, the issue concerning the refusal to issue an occupancy permit for

the Warehouse arose after Ellis was appointed by the Mayor; Ellis also works under the supervision of the Mayor in his capacity as the City's engineer.

52.    Metro's procedural and substantive due process rights have been violated as a result of the below-referenced City ordinances which, on their face and/or as applied in practice, are impermissibly vague under both the United States Constitution and the Arkansas Constitution. U.S. CONST. amends. V, XIV; ARK. CONST. art. II, § 8.

53.    Section 16-1233(a) of the City's code states as follows:

> **The city engineer shall be responsible for determining whether construction <u>is proceeding according to <u>*the grading plan*</u></u>. In applying for a grading permit, the applicant shall be deemed to have consented <u>*to such inspections*</u>. The city engineer may, when necessary, order remedial work or issue a stop work order under the terms of sections 16-1236 and 16-1237. The registered architect, landscape architect, or engineer responsible for the preparation of <u>*the grading plan*</u> shall make periodic inspections to ensure that construction is in accordance with the grading plan and shall submit a certification that all work has been constructed <u>in accordance with <u>*the approved grading plan*</u></u>.**

(emphasis added).

54.    Section 16-1236 of the City's code states as follows:

> **If it is determined through inspection that development is not proceeding in accordance with <u>*an approved grading plan*</u>, the city engineer shall immediately issue written notice thereof to the holder of the permit. Such notice shall describe the nature and location of the alleged noncompliance and specify the necessary remedial work....**

(emphasis added).

55.    The phrases "the grading plan", "the approved grading plan", and "an approved grading plan" are not defined in the City's ordinances, nor does the context of the ordinance provide clues as to the intended meaning of one phrase as compared to others. *See* City Code §§ 16-1233(a) & 16-1236.

56.    The phrase "such inspections" is not defined in the City's ordinances, nor does the

apparent intent of utilizing the word "such" as a comparison word, or adjective, relate back to any identifiable subject that is previously mentioned in the ordinance. *See* City Code § 16-1233(a).

57.    Because the phrases relative to a grading plan or approved grading plan are not defined, and, furthermore, are not utilized consistently in the above-quoted ordinances, it is unclear what plans relative to grading are being discussed; whether the grading plans can change over time or over the course of a specific grading project; and, further, if they can change, what the process or procedure would be for changing the elusive "grading plan" and whether the change could be requested by the contractor or unilaterally mandated by the City or its officials without notice to individuals or entity the City knows the change will affect.

58.    The City's ordinances fail for vagueness because, on their face, the language does not adequately convey the conduct being proscribed when measured by common understanding and practices; indeed, no reasonably prudent person would review these seemingly but not clearly interchangeable phrases about grading plans, nor the floating "such" adjective that refers back to a non-existent subject, as providing fair warning of what the ordinances actually require.

59.    Further, the City's ordinances fail for vagueness based on how they have been enforced by the City, including but not limited to by Moore, Ellis, Crafton Tull, and Davis.

60.    To date, the City's "enforcement" of the above-referenced ordinances, which enforcement has been meted out without Metro or Plaintiff's Contractor ever being provided anything in writing from the City's Former Engineer, Ellis, or Crafton Tull, has been capricious; indeed, the language of the ordinances does not protect citizens like Plaintiff from the risk of arbitrary enforcement or unfettered latitude of City officials.

61.    Metro would welcome and has requested from the City an understanding of what "inspections" Ellis and Crafton Tull have performed in relation to Ellis' verbal notice that he is, on

behalf of the City, refusing to issue a certificate of occupancy for the Warehouse due to alleged inadequacies of the Basin; further, Metro would welcome and has requested an understanding of what violations of the "the grading plan", "the approved grading plan", and/or "an approved grading plan" have been found by Ellis and Crafton Rull as part of Ellis' refusal to issue a certificate of occupancy.

62.    To date, Ellis, Crafton Tull, Davis, and the City have failed and refused to provide Metro any explanation of how these City ordinances are, in practice, being enforced by the City because, upon information and belief, the ordinances are actively being used by Ellis, Crafton Tull, Davis, and the City to improperly wield unbridled power over businesses like and including Metro without any correlative and legitimate government objective.

WHEREFORE, based on the foregoing, Metro prays for judgment against the City, Moore, Davis, Ellis, and Crafton Tull declaring Section 16-1233(a) and Section 16-1236 of the City ordinances unconstitutional, on their face and/or as applied, pursuant to the United States Constitution and/or the Arkansas Constitution for violating Metro's procedural and substantive due process rights, and preventing said defendants from denying Metro a permanent certificate of occupancy for the Warehouse based on the same or, alternatively, mandating that Defendants issue Metro a certificate of occupancy for the Warehouse; and for such other and further relief as the Court deems just and proper.

### Count II
### Violation of Due Process
### (Unconstitutional Taking *Per Se*)

COME NOW Plaintiffs and, for Count II of its cause of action against the City, Moore, Davis, Ellis, and Crafton Tull (herein, collectively, the "Defendants"), state and inform the Court as follows:

63.     Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

64.     In failing and refusing to issue to Plaintiff's Contractor an occupancy permit for the Warehouse, a temporary occupancy permit for the Warehouse, or a final written decision, Defendants have violated Metro's due process rights by depriving Metro of the economically viable use of its land.

65.     Specifically, Plaintiff's Engineer submitted to the City, and the City was well aware, as of September 29, 2021, that Plaintiffs desired to utilize the property located at 801 Metro Place for a warehouse for the purpose of storing at low-cost inventory necessary for the operation of the Retail Store and, additionally, for the operation of other stores of Plaintiffs located in the State of Arkansas.

66.     The only intended use as submitted by Plaintiff's Engineer to the City of the 801 Metro Place real estate was as a warehouse, the plans for the construction of which were reviewed, modified, and ultimately approved by the City.

67.     During the course of the subsequent two years, Metro expended significant sums in building the Warehouse according to the plans approved by the City.

68.     Nevertheless, despite substantial if not complete compliance with the plans as approved by the City in 2021, the Defendants are now refusing to allow Plaintiffs to utilize the Warehouse property as a warehouse, which is depriving Plaintiffs of the property's economic benefit.

69.     As a result of the construction of the Warehouse, which the City approved and for which the City issued a construction permit, and for which the City promised to issue a certificate of occupancy, there is no viable use for the land on which it is situated, except as a Warehouse.

70.     Defendants have knowingly, intentionally, and unjustifiably deprived Plaintiffs of the use of the real estate on which the Warehouse is situated without just compensation therefor, which

constitutes a violation of due process under both the United States Constitution and the Arkansas Constitution. U.S. CONST. amends. V, XIV; ARK. CONST. art. II, §§ 8 and 22.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against the Defendants declaring Plaintiffs to have suffered a taking without just compensation under the United States Constitution and/or the Arkansas Constitution; compensating Plaintiffs for the diminished value of the Warehouse property, for the amount incurred by Plaintiffs in constructing the Warehouse, and for Plaintiffs' lost profits for the period of time from May 18, 2023, to present, during which time Plaintiffs were unlawfully and without justification denied the utilization and economic benefit of Metro's property; and prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Plaintiffs a certificate of occupancy for the Warehouse; and for such other and further relief as the Court deems just and proper.

**Count III**
**Violation of Due Process**
**(Unconstitutional Regulatory Taking)**

COME NOW Plaintiffs and, for Count III of their cause of action against the City, Moore, Davis, Ellis, and Crafton Tull (herein, collectively, the "Defendants"), state and inform the Court as follows:

71.     Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

72.     In failing and refusing to issue to Plaintiff's Contractor an occupancy permit for the Warehouse, a temporary occupancy permit for the Warehouse, or a final written decision under applicable City ordinances, Defendants have violated Plaintiffs' due process rights by interfering with Plaintiffs' investment expectations and severely restricting Plaintiffs' rights without any legitimate regulatory objective.

14

73.     Specifically, Plaintiff's Engineer submitted to the City, and the City was well aware, as of September 29, 2021, that Plaintiffs desired to utilize the property located at 801 Metro Place for a warehouse for the purpose of storing at low-cost inventory necessary for the operation of the Retail Store and, additionally, for the operation of other stores of Plaintiffs located in the State of Arkansas.

74.     The only intended use as submitted by Plaintiff's Engineer to the City of the 801 Metro Place real estate was as a warehouse, the plans for the construction of which were reviewed, modified, and ultimately approved by the City.

75.     During the course of the subsequent two years, Plaintiffs expended significant sums in building the Warehouse according to the plans approved by the City.

76.     Nevertheless, despite substantial if not complete compliance with the plans as approved by the City in 2021, the Defendants are now refusing to permit the Plaintiffs to utilize the Warehouse property as a warehouse, which has and continues to diminish the value of the property, has resulted in lost income to Plaintiffs, and has unreasonably diminished Plaintiffs' return on their investment.

77.     As a result of the construction of the Warehouse, which the City approved and for which the City issued a construction permit, and for which the City promised to issue a certificate of occupancy, there is no other viable or profitable use for the land on which it is situated.

78.     Defendants have knowingly, intentionally, and unjustifiably interfered with Plaintiffs' reasonable business expectations in depriving Plaintiffs of the use of the real estate on which the Warehouse is situated without a legitimate or cognizable government interest in doing so, and without giving Plaintiffs just compensation therefor, which constitutes a violation of due process under both the United States Constitution and the Arkansas Constitution. U.S. CONST. amends.

V, XIV; ARK. CONST. art. II, §§ 8 and 22.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against the Defendants declaring Metro to have suffered a taking without just compensation under the United States Constitution and/or the Arkansas Constitution; compensating Plaintiffs for the diminished value of the Warehouse property, for the amount incurred by Plaintiffs in constructing the Warehouse, and for Plaintiffs' lost profits resulting from the inability to use the Warehouse for the period of time from May 18, 2023, to present; and prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Metro a certificate of occupancy for the Warehouse; and for such other and further relief as the Court deems just and proper.

**Count IV**
**Violation of Equal Protection**
**(Certificate of Occupancy)**

COME NOW Plaintiffs and, for Count IV of their cause of action against the City, Moore, Davis, Ellis, and Crafton Tull (herein, collectively, the "Defendants"), state and inform the Court as follows:

79.     Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

80.     Metro has property rights in the Nicolas Place Development, which rights include but are not limited to ownership of the real property on which the Warehouse has been constructed, the real property where the Basin is located, and Metro Place road.

81.     Despite having approved the Nicolas Place Development as submitted by Metro's agents to the City in 2015, despite having approved the final construction of the Basin in 2016, despite having taken Metro's money to issue permits requested by Metro's agents for construction of the Warehouse, despite complying with the modifications to the Basin required by the City in

order to obtain a construction permit for the Warehouse, despite Metro and Plaintiff's Contractor having substantially if not completely complied with the plans for the Warehouse as approved by the City in 2021, and despite promising to issue a certificate of occupancy for the Warehouse, the Defendants are now knowingly, intentionally, and without justification refusing to issue an occupancy permit for the Warehouse.

82.     Upon information and belief, Defendants' refusal to issue the requested certificate of occupancy for the Warehouse is materially different and worse treatment than has been given by Defendants to other retail, warehousing, commercial, and industrial applicants seeking a certificate of occupancy during similar periods of time.

83.     Furthermore, Defendants' treatment of Metro concerning the requested certificate of occupancy during the course of the planning for and construction of the Warehouse has been inconsistent and materially shifting based on the individuals holding the office of City engineer at any given time; have most recently been intentionally and purposefully discriminatory and irrationally intended to force Plaintiffs to incur prohibitive costs solely for subjective and unarticulated reasons; and now constitutes an arbitrary position of the Defendants to leverage their municipal powers to force businesses with ostensibly "deep pockets" into submission and compliance.

84.     The City ordinances, namely, Sections 16-1233, 16-1234, 16-1236, and 16-1237, as applied and enforced by Defendants against Plaintiffs as described herein, constitute unreasonable, unjustified, arbitrary, and purposeful discrimination against Plaintiffs, and Defendants' actions and/or inactions bear no rational relationship to a legitimate government or City objective.

85.     As a direct and proximate result of the foregoing, Plaintiffs have been denied equal protection under the law.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against the Defendants declaring that Metro's right to equal protection under the law has been violated under the United States Constitution and/or the Arkansas Constitution due to Defendants' failure and refusal to issue a certificate of occupancy for the Warehouse; compensating Plaintiffs for the diminished value of the Warehouse property, for the amount incurred by Plaintiffs in constructing the Warehouse, and for Plaintiffs' lost profits resulting from the inability to use the Warehouse for the period of time from May 18, 2023, to present; and prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Metro a certificate of occupancy for the Warehouse; and for such other and further relief as the Court deems just and proper.

## Count V
## Violation of Equal Protection
## (FOIA Request)

COMES NOW Metro Appliances and, for Count V of its cause of action against the City, Moore, and Estes (herein, collectively, the "Defendants"), states and informs the Court as follows:

86.    Metro Appliances incorporates each of the preceding paragraphs as though fully set forth herein.

87.    Metro Appliances is incorporated in and does business in the State of Arkansas; as such, it is a "citizen" of the State of Arkansas pursuant to Ark. Code Ann. Section 25-19-105.

88.    On or about July 20, 2023, Metro Appliances submitted its properly drafted FOIA request for public records to the City, addressed specifically to Estes as the records custodian. *See* Exhibit 2; Ark. Code. Ann. § 25-19-105.

89.    The City's Assistant to the Mayor, Melanie Houston, confirmed receipt of the FOIA request, which electronic mail was the sole instance of written communication Plaintiffs and the

undersigned received from the City on this issue. *See* Exhibit 2.

90.    On or about August 11, 2023, Plaintiffs' counsel sent the City a follow up letter concerning the status of the FOIA request, which letter was received and signed for by a City employee, but to which no response from the City has been received to date. *See* Exhibit 2.

91.    Arkansas Code Annotated Section 25-19-102 provides as follows:

> It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy. Toward this end, this chapter is adopted, making it possible for them or their representatives to learn and to report fully the activities of their public officials.

92.    Further, Arkansas Code Annotated Section 25-19-105 provides as follows:

> (a)(3)  A custodian shall respond as follows in writing within the time period required under this section to a written request for public records:
> > (A)    If no records exist that are responsive to the request, the custodian shall respond that no records exist;
> > (B)    If any responsive records that exist are subject to exemptions under this chapter or other law, the custodian shall respond and identify the applicable exemptions; and
> > (C)    If the custodian lacks administrative control over any responsive records that may exist, the custodian shall respond and identify the appropriate custodian to direct the request to, if known or readily ascertainable.
> (4)    A custodian's response under subdivision (a)(3) of this section may be delivered by electronic mail.
> (5)    If a custodian knowingly fails to respond as required under subdivision (a)(3) of this section, he or she shall be subject to the penalties in § 25-19-104 for a violation of this chapter.
> (6)    The requirements of this subsection do not affect the obligation of a custodian to immediately provide to the requestor any responsive records not in active use or storage.
>
> ...
>
> (d)(1)  Reasonable access to public records and reasonable comforts and facilities for the full exercise of the right to inspect and copy,...those records shall not be denied to any citizen.

93.    Pursuant to Ark. Code Annotated Section 25-19-105, Defendants were required to respond to Metro Appliances' FOIA request upon request and payment of the fee pursuant to Ark.

Code Annotated Section 25-19-105(d)(2)(A). To date, and despite follow-up correspondence sent by the undersigned, Defendants have knowingly and intentionally failed and refused to respond to Metro Appliances' FOIA request. *See* Exhibit 2.

94.     Upon information and belief, Defendants' refusal to response to Metro Appliances' FOIA request is materially different and worse treatment than has been given by Defendants to other citizen applicants seeking to copy and/or inspect public records.

95.     Furthermore, Defendants' treatment of Metro Appliances concerning the FOIA request is, upon information and belief, intentionally and purposefully discriminatory with a purpose of withholding information from Plaintiffs and to intimidate Plaintiffs to forego their request for records and to undertake the behemoth expenses to improve the Basin which are being unreasonably required by the Ellis.

96.     The Arkansas State statutes, namely, Sections 21-19-101, *et seq,* as applied and enforced by Defendants against Metro Appliances as described herein, constitute unreasonable, unjustified, arbitrary, and purposeful discrimination against Metro Appliances, and Defendants' actions and/or inactions bear no rational relationship to a legitimate government or City objective.

97.     As a direct and proximate result of the foregoing, Metro Appliances has been denied equal protection of law.

98.     Further, pursuant to Ark. Code Annotated Section 25-19-107, Metro Appliances is entitled to its attorneys' fees and costs herein expended and incurred due to Defendants' violations.

WHEREFORE, based on the foregoing, Metro Appliances prays for judgment against the Defendants declaring that Metro Appliances' right to equal protection of the law has been violated under the United States Constitution and/or the Arkansas Constitution due to Defendants' failure and refusal to respond and make available for inspection and/or copying those records requested

in Exhibit 2 hereto; prohibiting Defendants from denying Metro Appliances access to any of the documentation requested in Exhibit 2, even if an objection to production would otherwise have been appropriate, due but not limited to Defendants' unreasonable and capricious delay; for Metro Appliances' attorney fees and costs herein expended and incurred; and for such other and further relief as the Court deems just and proper.

**Count VI**
**42 U.S.C. § 1983**

COME NOW Plaintiffs and, for Count IV of their cause of action against the City, Moore, Davis, Ellis, Estes, and Crafton Tull, all in their individual and official capacities (herein, collectively, the "Defendants"), state and inform the Court as follows:

99.    Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

100.    As set forth above, Defendants have violated and deprived Plaintiffs of their constitutional rights and privileges under the United States Constitution.

101.    Plaintiffs' constitutional rights and privileges existed and were clearly established at the time of the deprivation.

102.    At all times herein, Moore was the supervisor of and superior to Defendants Davis, Ellis, Estes, and Crafton Hull, and he had the power to direct and/or correct their respective actions and inactions taken on behalf or as an agent of the City.

103.    At all times herein, Defendants' actions and inactions were under the color of law.

104.    As a direct and proximate result of Defendants' actions and inactions, Plaintiffs have suffered actual damage.

105.    The actions and inactions of Defendants were and continue to be knowing, intentional, egregious, and outrageous such that liability should be imposed.

106.    Further, the actions and inaction of the Defendants under color of law constitute such

a capricious abuse of power and position, and a deliberate indifference to Plaintiffs' rights, that Plaintiffs are entitled to punitive damages.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against the Defendants, in their official and individual capacities, declaring that Plaintiffs' substantive and procedural rights have been violated under the United States Constitution; compensating Plaintiffs for the diminished value of the Warehouse property, for the amount incurred by Plaintiffs in constructing the Warehouse, and for Plaintiffs' lost profits resulting from the inability to use the Warehouse for the period of time from May 18, 2023, to present; for punitive damages as determined by the trier of fact; prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Metro a certificate of occupancy; prohibiting Defendants from denying Metro Appliances access to any of the documentation requested in Exhibit 2, even if an objection to production would otherwise have been appropriate, due but not limited to Defendants' unreasonable and capricious delay; for their attorney fees and costs herein expended and incurred; and for such other and further relief as the Court deems just and proper.

### Count VII
### Violation of FOIA
### (Ark. Code Ann. §§ 25-19-101, *et seq*)

COMES NOW Metro Appliances and, for Count VII of its cause of action against the City, Moore, and Estes, states and informs the Court as follows:

107.   Metro Appliances incorporates each of the preceding paragraphs as though fully set forth herein.

108.   To date, and despite follow-up correspondence sent by the undersigned, Defendants have failed and refused to respond to Metro Appliances' properly submitted FOIA request. *See*

Exhibit 2.

109.    Upon information and belief, Defendants' failure and refusal to comply with the Arkansas FOIA statutes is knowing, deliberate, and intentional; at best, it is negligent.  But under no argument is it substantially justified.  *See* Ark. Code Ann. §§ 25-19-101, *et seq.*

110.    Pursuant to Ark. Code Annotated Section 25-19-107, Metro Appliances is entitled to its attorneys' fees and costs herein expended and incurred due to Defendants' violations.

WHEREFORE, based on the foregoing, Metro Appliances prays for judgment against the Defendants finding that Defendants' failure and refusal to respond and make available for inspection and/or copying those records requested in Exhibit 2 hereto constitutes an unjustified intentional or negligent violation of Ark. Stat. Ann. §§ 25-19-107; prohibiting Defendants from denying Metro Appliances access to any of the documentation requested in Exhibit 2, even if an objection to production would otherwise have been appropriate, due but not limited to Defendants' unreasonable and capricious delay; for Metro Appliances' attorneys' fees and costs herein expended and incurred; and for such other and further relief as the Court deems just and proper.

## Count VIII
### Negligence
#### (Violation of City Ordinances/Failure to Issue Occupancy Permit)

COME NOW Plaintiffs and, for Count VIII of their cause of action against the City, Moore, Davis, Ellis, and Crafton Tull, all in their individual and official capacities (herein, collectively, the "Defendants"), state and inform the Court as follows:

111.    Plaintiffs incorporate each of the preceding paragraphs as though fully set forth herein.

112.    Plaintiffs are entities that may both be found in and pay taxes in the State of Arkansas; further, Metro has remitted significant sums in permitting fees to the City in connection with the Nicolas Place Development, the Retail Store, the Basin, and the Warehouse.

113.    As such, Defendants owed Plaintiffs a duty to faithfully, competently, and without discrimination abide by the City ordinances applicable to the Warehouse construction project.

114.    As previously set forth herein, Defendants have breached their duty to Plaintiffs in but not limited to failing to properly oversee the Warehouse construction project and intentionally and capriciously failing and refusing to issue an occupancy permit for the Warehouse.

115.    As a direct and proximate result of Defendants' breach, Plaintiffs have suffered damage.

116.    Defendants have waived immunity at least to the extent of their insurance limits that provide or may provide coverage for this claim and, consequently, should be held liable to Plaintiffs.

117.    Further, the actions and inaction of the Defendants constitute such a capricious abuse of power and position, and a deliberate indifference to Plaintiffs' rights, that Plaintiffs are entitled to punitive damages.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against Defendants, jointly and severally, compensating Plaintiffs for the diminished value of the Warehouse property, for the amount incurred by Plaintiffs in constructing the Warehouse, and for Plaintiffs' lost profits resulting from the inability to use the Warehouse for the period of time from May 18, 2023, to present; for punitive damages as determined by the trier of fact; prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Metro a certificate of occupancy for the Warehouse; and for such other and further relief as the Court deems just and proper.

### Count IX
### Constructive Fraud

COMES NOW Metro and, for Count IX of its cause of action against the City, Moore, and

Davis, in their individual and official capacities (herein, collectively, the "Defendants"), states and informs the Court as follows:

118.    Metro incorporates each of the preceding paragraphs as though fully set forth herein.

119.    Defendants owed Metro a duty to be knowledgeable, forthcoming, and truthful about the City's discretionary requirements for construction, about the construction process for the Warehouse, and about the City's intent to issue an occupancy permit for the Warehouse; Defendants also owed Metro a duty to consistently and uniformly construe and implement the City's ordinances.

120.    As previously set forth herein, in November of 2021, the City and Davis represented to Metro or its agents that, if Plaintiff's Engineer would make certain modifications to the Basin, then the plans for the construction of the Warehouse would be deemed adequate and approved.

121.    Said representations were made by the City and Davis, who both asserted them to be true, but were made while the City and Davis had no knowledge of or spoke with reckless disregard for the veracity of their representations.

122.    Said representations to Metro or its agents were material.

123.    In reasonable reliance on the City's representations, Metro incurred the expense of implementing the requested modifications to the Basin and, subsequently, the City issued a construction permit for the Warehouse, and Metro expended significant sums in building the Warehouse.

124.    Thereafter, once construction of the Warehouse according to the plans approved by the City was complete, the City, the City's Former Engineer, and Davis represented to Metro or its agents that a certificate of occupancy would issue for the Warehouse upon completion by Metro of the following three action items:  (a) adjusting the height of a fire hydrant, (b) completion of

landscaping, including seeding of the west graded area, and (c) the "Best Management Practice" (BMP) devices would need to be removed following the completion of landscaping.

125.    Said representations were made by the City and Davis, who asserted them to be true, but were made while the City and Davis had no knowledge of or spoke with reckless disregard for the veracity of their representations.

126.    Said representations to Metro or its agents were material.

127.    Each of the above-referenced action items dictated by the City were completed by Plaintiff's Contractor on or before May 18, 2023.

128.    To date, the City has failed and refused to issue a certificate of occupancy for the Warehouse, and the City, Ellis and Davis are now citing alleged inadequacies of the Basin, which Basin the City had previously represented was acceptable.

129.    Defendants have breached their duty to Metro in that they misrepresented how the City would exercise discretion with respect to a certificate of occupancy for the Warehouse, they misrepresented how they would handle the construction process for the Warehouse, they misrepresented their satisfaction with the modifications they requested and Metro made to the Basin, and they failed to issue a certificate of occupancy for the Warehouse upon Metro's completion of the aforementioned three requested action items.

130.    As a direct and proximate result of Defendants' misrepresentations, Metro has suffered damage.

131.    Defendants have waived immunity at least to the extent of their insurance limits that provide or may provide coverage for this claim and, consequently, should be held liable to Metro.

132.    Further, the actions and inaction of the Defendants constitute such a capricious abuse of power and position, and a deliberate indifference to Plaintiffs' rights, that Plaintiffs are entitled

to punitive damages.

WHEREFORE, based on the foregoing, Metro prays for judgment against Defendants, jointly and severally, compensating Metro for the diminished value of the Warehouse property, for the amount incurred by Metro in constructing the Warehouse, and for Metro's lost profits resulting from the inability to use the Warehouse for the period of time from May 18, 2023, to present; for punitive damages as determined by the trier of fact; prohibiting Defendants from continuing to deny Metro a permanent certificate of occupancy for the Warehouse or, alternatively, mandating that Defendants issue Metro a certificate of occupancy; and for such other and further relief as the Court deems just and proper.

**Count X**
**Negligence**
**(Violation of FOIA Statutes)**

COMES NOW Metro Appliances and, for Count X of its cause of action against the City, Moore, and Estes, states and informs the Court as follows:

133.   Metro Appliances incorporates each of the preceding paragraphs as though fully set forth herein.

134.   Metro Appliances is organized and existing under the laws of the State of Arkansas, and it pays taxes in the State of Arkansas.

135.   As such, Defendants owed Metro Appliances a duty to faithfully, competently, and without discrimination abide by the state statutes applicable to FOIA requests. *See* §§ 25-19-101, *et seq.*

136.   As previously set forth herein, Defendants have breached their duty to Metro Appliances in but not limited to failing to respond in any fashion whatsoever to Metro Appliances' FOIA request, in failing to produce the requested records, and in failing to process the request

within a timely manner as prescribed by statute.  *See* Exhibit 2.

137.    As a direct and proximate result of Defendants' breach, Metro Appliances has suffered damage.

138.    Defendants have waived immunity at least to the extent of their insurance limits that provide or may provide coverage for this claim and, consequently, should be held liable to Plaintiffs.

139.    Pursuant to Ark. Code Annotated Section 25-19-107, Metro Appliances is entitled to its attorneys' fees and costs herein expended and incurred due to Defendants' violations.

WHEREFORE, based on the foregoing, Metro Appliances prays for judgment against the Defendants, jointly and severally, for Metro Appliances' damages incurred; prohibiting Defendants from denying Metro Appliances access to any of the documentation requested in Exhibit 2, even if an objection to production would otherwise have been appropriate, due but not limited to Defendants' unreasonable and capricious delay; for Metro Appliances' attorneys' fees and costs herein expended and incurred; and for such other and further relief as the Court deems just and proper.

## Count XI
## Constructive Trust

COMES NOW Metro and, for Count XI of its cause of action against the City, states and informs the Court as follows:

140.    Metro incorporates each of the preceding paragraphs as though fully set forth herein.

141.    Metro may be found in and pays taxes in the State of Arkansas; Metro has also remitted significant sums in permitting fees to the City in connection with the Nicolas Place Development, the Retail Store, the Basin, and the Warehouse.

142.    As such, the City owed Metro a duty to be knowledgeable, forthcoming, and truthful

about the City's discretionary requirements for construction, about the construction process for the Warehouse, and about the City's intent to issue an occupancy permit for the Warehouse; Defendants also owed Metro a duty to consistently and uniformly construe and implement the City's ordinances.

143.    As previously set forth herein, in November of 2021, the City and Davis represented to Metro or its agents that, if Plaintiff's Engineer would make certain minimal modifications to the Basin, then the plans for the construction of the Warehouse would be deemed adequate and approved.

144.    Said representations were made by the City and Davis, who both asserted them to be true, but while the City and Davis had no knowledge of or spoke with reckless disregard for the veracity of their representations.

145.    Said representations to Metro or its agents were material.

146.    In reasonable reliance on the City's representations, Metro incurred the expense of implementing the modifications to the Basin and, subsequently, the City issued a construction permit for the Warehouse, and Metro incurred significant expense in constructing the Warehouse.

147.    Thereafter, once construction of the Warehouse according to the plans approved by the City was complete, the City, the City's Former Engineer, and Davis represented to Metro or its agents that a certificate of occupancy would issue for the Warehouse upon completion by Metro of the following three action items:  (a) adjusting the height of a fire hydrant, (b) completion of landscaping, including seeding of the west graded area, and (c) the "Best Management Practice" (BMP) devices would need to be removed following the completion of landscaping.

148.    Said representations were made by the City, the City's Former Engineer, and Davis, who asserted them to be true, but while they had no knowledge of or spoke with reckless disregard

for the veracity of their representations.

149.    Said representations to Metro or its agents were material.

150.    Each of the above-referenced action items were completed by Plaintiff's Contractor on or before May 18, 2023.

151.    Nevertheless, to date, despite receipt of significant application fees for the Nicolas Place Development and various projects associated therewith, including but not limited to fees for the Retail Store, the Basin, and the Warehouse, the City has failed and refused to issue a certificate of occupancy for the Warehouse, and the City and Ellis are now citing alleged inadequacies of the Basin that the City had previously represented to Metro or its agents was acceptable.

152.    As a direct and proximate result of the City's misrepresentations, Metro has suffered damage.

153.    It would be unjust and inequitable to permit the City to retain the application and other permitting fees paid by Metro to the City for the Basin and for the Warehouse projects, given that the City acted through fraud or breach of fiduciary duty in requesting, receiving, and retaining the benefit of said funds without, in turn, abiding in good faith by the City's own ordinances and its prior representations to Metro, on which Metro reasonably relied.

WHEREFORE, based on the foregoing, Metro prays for judgment against the City whereby the Court imposes a constructive trust in favor of Metro equivalent to the total amount paid by Metro or its agents in plans and permitting fees for both the Basin and the Warehouse; and for such other and further relief as the Court deems just and proper.

### Count XII
### Quantum Meruit

COMES NOW Metro and, for Count XII of its cause of action against the City, states and informs the Court as follows:

154.    Metro incorporates each of the preceding paragraphs as though fully set forth herein.

155.    As set forth herein, Metro has provided improvements and benefit to real property located within the City limits, and Metro has paid substantial fees to the City in connection with the Nicolas Place Development.

156.    Specifically, the City has received direct and indirect value from Metro, including but not limited to the construction and development of the Nicolas Place Development and all fee submissions related thereto; the construction of the Basin, and all fee submissions related thereto; the construction of Metro Place, with the widening of Goad Springs Road, and all fee submissions related thereto; the building of the Retail Store and all fee submissions related thereto, which has improved the property value of the lot(s) on which the Retail Store is situated and for which Metro has been and will continue to pay taxes; and the building of the Warehouse and all fee submissions related thereto, which has improved the property value of the lot(s) on which the Warehouse is situated and for which Metro has been and will continue to pay taxes.

157.    Metro reasonably expected to be able to complete *and occupy* the Warehouse upon completion of construction, after meeting the City's reasonable and constitutional conditions and requirements.

158.    Metro has met all such conditions and requirements.

159.    The City was fully aware, starting in 2015 with the submission of the proposed Nicolas Place Development, and continuously since then, that Metro desires to develop and build improvements on the realty it owns in the Nicolas Place Development.

160.    Furthermore, the City was fully aware, starting in 2021, and continuously since then, that Metro desired to build and ultimately occupy the Warehouse.

161.    To date, the City, Benton County, and/or the State of Arkansas have received taxes on

and has received and retained all permit application fees paid by Metro associated with the Nicolas Place Development.

162.    Prior to Ellis being appointed as the City engineer, the City intended to and represented to Metro or its agents that it would issue an occupancy permit for the Warehouse.

163.    To date, the City, Benton County, and/or the State of Arkansas has received taxes on and retained all permit application fees paid by Metro associated with the Warehouse and the real property on which it is situated.

164.    As a direct and proximate result of Defendants' wrongful actions, Metro has been damaged.

165.    Equity and fairness require that the City be liable to Metro for the reasonable value of the improvements made to the Basin and to the realty on which the Warehouse is situated, as well as all application fees paid to the City by Metro.

WHEREFORE, based on the foregoing, Metro prays for judgment against the City in and for the value of the improvements made to the Basin and to the realty on which the Warehouse is situated, and the fees paid to the City, as determined by the trier of fact; and for such other and further relief as the Court deems just and proper.

**Count XIII**
**Application for Temporary, Preliminary, and Permanent (Mandatory) Injunctive Relief**

COME NOW Plaintiffs, pursuant to Fed. R. Civ. Pro. 65 and, for Count XIII of their cause of action against the City, Moore, Estes, Davis, Ellis, and Crafton Tull (herein, collectively, the "Defendants"), state and inform the Court as follows:

166.    Metro incorporates each of the preceding paragraphs as though fully set forth herein.

167.    Unless enjoined by this Court, the City, and its officials and independent contractors acting under authority from the City and color of law, will continue to unlawfully deprive Metro

32

of the use and economic benefit of its real property on which the Warehouse is situated.

168.    Unless the Court issues a mandatory injunction, the City and its officials will continue to unlawfully deprive Metro Appliances of its rights as a citizen of the State of Arkansas to review, inspect, and copy public records.

169.    Defendants' actions and inactions, if not enjoined, will cause immediate and irreparable injury to Plaintiffs.

170.    Because Defendants have failed and refused to provide documentation in response to the FOIA request, and because Defendants have failed and refused to provide any stop work order, denial of an occupancy permit, or other documentation showing the basis upon which it continues to fail to issue an occupancy permit for the Warehouse, Plaintiffs have no adequate remedy at law, and will be irretrievably damaged if the Court does not issue an injunction herein.

WHEREFORE, based on the foregoing, Plaintiffs pray for judgment against the Defendants for their attorney fees and costs herein expended and incurred and for an Order of this Court temporarily, preliminarily, and permanently mandating that the Defendants do as follows:

(a)    Issue a temporary certificate of occupancy for the Warehouse pending this Court's determination at a preliminary injunction hearing herein;

(b)    Issue a permanent certificate of occupancy for the Warehouse; and

(c)    Within seven (7) days, process Metro Appliances' FOIA request by producing to Metro Appliances all substantive and unredacted records that are responsive to those subjects and categories of documents set forth in the FOIA request attached hereto as Exhibit 2;

and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

ROONEY MCBRIDE & SMITH, LLC


By:  /s/ Heather Rooney McBride
     Heather Rooney McBride
     MBN 58832, ABN 2014113
     1445 E. Republic Rd., Suite 300
     Springfield, MO  65804
     Phone:  417-708-9681
     Fax:  417-708-9682
     heather@rmsattorneys.com
     *Attorneys for Metro Builders Supply, Inc.*
     *And Metro Builders Supply of Rogers, Inc.*

## **VERIFICATION**

STATE OF MISSOURI          )
                           ) SS
COUNTY OF GREENE           )

     DuWayne Eoff, of lawful age and being first duly sworn upon his oath, states that the facts stated above are true and correct according to her best information, knowledge, and belief, and that he executed this Verified Petition with authority from Eoff and Associates, Inc., as agent for METRO BUILDERS SUPPLY, INC., and as its and their own free act and deed.

                            _____
                            DuWayne Eoff
                            *For* Eoff & Associates, Inc.
                            ("Plaintiff's Contractor")

Subscribed and sworn to before me this __7th__ day of _December_ , 2023.

                            _____

                            Notary Public

                            My Commission Expires:  2-24-2025

```
JULIE A ALEXANDER
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES FEBRUARY 24, 2025
GREENE COUNTY
COMMISSION #64485630
```

<u>VERIFICATION</u>

STATE OF MISSOURI          )
                           ) SS
COUNTY OF GREENE           )

      Doug Howell, of lawful age and being first duly sworn upon his oath, states that the facts stated above are true and correct according to his best information, knowledge, and belief, and that he executed this Verified Petition with authority from METRO BUILDERS SUPPLY OF ROGERS, INC. and as their own free act and deed.

Doug Howell
For Metro Builders Supply of Rogers, Inc.

Subscribed and sworn to before me this 7<u>th</u> day of _December_, 2023.

Notary Public
My Commission Expires: _12-13-2027_

BETTY J. SALMON
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES DECEMBER 13, 2027
GREENE COUNTY
COMMISSION #15288434



July 20, 2023



The City of Lowell, Arkansas - Custodian of Records
c/o: Elizabeth Estes, City Clerk
216 N. Lincoln St
Lowell, Arkansas 72745
*Sent via Priority U.S. Mail*
*and via email to:* lestes@lowellarkansas.gov

RE:    **Freedom of Information Act Request, Ark. Code Ann. § 25-19-101,**
*et seq.*

Dear Ms. Estes:

This is a request for records under the Arkansas Freedom of Information Act, Title 25, Chapter 19 of the Arkansas Code, being sent to you on behalf of my client, Metro Builders Supply of Rogers, Inc., which is a incorporated and existing under the laws of the State of Arkansas. I am seeking documents regarding local ordinances and regulations regarding water retention basins or ponds.

Should the cost of this request exceed $500.00, please call our office to confirm the estimated cost before proceeding. Please provide an itemized breakdown of charges. However, I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest and will contribute significantly to the public's understanding of whether or not the City of Lowell does or does not discriminate in its issuance of occupancy permits for new development within the City. This information is not being sought for commercial purposes.

The Arkansas Freedom of Information Act requires a response within three (3) business days. If access to the records I am requesting will take longer, please contact me with information about when I can expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information, and notify me of the appeal procedures available to me under the law.

For purposes of the following request, the following terms are defined as stated below:

- The terms "relates to" or "relating to" or "concerning" or "regarding" means involving, concerning, or in any way touching upon the matter sought.

- The terms "document" or "documents" shall refer to, without limitation, all non-identical copies or versions of any written, photographed, transcribed, recorded, or otherwise produced material however produced or reproduced and whether in draft or final form,

**ATTORNEYS**

Heather Rooney McBride
Also licensed in Arkansas
Also licensed in Oklahoma

Scott A. Smith
Also licensed in Kansas

Austin E. Williamson
Also licensed in Arkansas

Andy Scholz

Dakota W. Paris

Haley G. Ethridge
Also licensed in Arkansas

Jennifer A. Brodersen

Emily F. Blinzig

Robert A. Grosser

1445 E. Republic Road, Ste 300
Springfield, Missouri 65804
P 417.708.9681
F 417.708.9682
rmsattorneys.com



PRACTICING
EXCELLENCE

1

including, but not limited to, telephone logs, letters, handwritten notes, contracts, agreements, licenses, notices, rules, regulations, directives, records or memoranda of telephone or personal conversations, minutes of meetings, purchase orders, receipts, advertising copy, catalogues, agreements, brochures, correspondence, interoffice communications, memoranda, notes, telephone records, transcripts, manuals, guidelines, statements, ledgers, books of account, proposals, prospectuses, offers, orders, bid proposals, working papers, desk calendars, appointment books, diaries, time sheets, logs, telegrams, teletype messages, reports, records, studies, surveys, designs, plans, approvals, working papers, charts, graphs, indices, films, movies, tapes for visual and audio reproduction, recordings or materials similar to any of the foregoing, computer printouts, writings which are now stored by entry into a computer or data system, digital files, or any other data from which intelligence can be perceived, excluding those items that are protected by attorney-client privilege or other valid and enforceable privilege. The term "document" includes all copies of a document which contain additional writing, underlining notes, deletions or any other markings or notations or versions of a document which are otherwise not identical copies of the original.

- The term "Nicolas Place Development" refers to the property commonly known as 801 Metro Pl, Lowell, Arkansas 72745, including, but not limited to, Lots 1, 2, & 3 of the Nicolas Place-Lowell subdivision located in Redevelopment District 1 Lowell, in whole or any portion thereof, including the stormwater retention basin thereof.

Please provide my office with copies of the following from the City of Lowell, Arkansas:

- All ordinances, resolutions, codes, and regulations, codified or enacted or adopted by the City of Lowell, related to the design, construction, or approval of stormwater retention basins or water retention storages, effective on and after January 1, 2015;

- Any and all amendments to ordinances, resolutions, codes or regulations of the City of Lowell relating to stormwater retention basins or water retention storages effective on or after January 1, 2015;

- Any and all City Council Meeting Minutes where ordinances, resolutions, codes, or regulations which relate to stormwater retention basins or water retention storages were enacted or adopted for the period from January 1, 2015, to present;

- Any and all analyses, notes, photographs, drawings, videos, communication, and reports of engineers, inspectors, or other professionals that were paid for, or created by, the City of Lowell, relating to the stormwater retention basin located in the Nicolas Place Development;

- Any and all communications between any elected or appointed official and any City of Lowell engineer or inspector from January 1, 2021, to the present which refer or relate to the Nicolas Place Development, Eoff & Associates, Inc., and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof.

- All notes, memoranda, reports, analyses, drawings, and communications of Richard Stone which refer or relate to the Nicolas Place Development.

2

- All communications between Daniel Ellis and any elected or employed official of the City of Lowell, and between Daniel Ellis and any employee of the City of Lowell, which refer or relate to the Nicolas Place Development, Eoff & Associates, Inc. and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof.

- For the period from January 1, 2022, to present, the portions of the employment file of Richard Stone that refer or relate to the timeframe and/or reason for his change in position with the City of Lowell that became effective in or about 2023.

- All rulings, decisions, and City Council, Board of Adjustment, and other board, commission, or committee meeting minutes, for the period from January 1, 2015, to present, which refer or relate to the Nicolas Place Development and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof; and

- All documents, records, notes, memorandums, and communications that refer or relate to the application for, approval, denial, or delay of occupancy permits regarding the Metro warehouse project located at 801 Metro Pl, Lowell, Arkansas 72745, in the Nicolas Place Development.

Upon compiling these records, please send them electronically or mail them to Rooney McBride & Smith, LLC, Attn: Heather Rooney McBride, 1445 E. Republic Road, Suite 300, Springfield, Missouri 65804 or heather@rmsattorneys.com, with a carbon copy to betty@rmsattorneys.com.

Thank you in advance for your prompt attention to and cooperation in this matter. If you have any questions or require any clarification concerning this correspondence, please do not hesitate to contact me.

Sincerely,

Heather Rooney McBride

HRM:SMCM:bjs

c.c.: Metro Appliances & More (*via email*)

3



**ATTORNEYS**

Heather Rooney McBride
Also licensed in Arkansas
Also licensed in Oklahoma

Scott A. Smith
Also licensed in Kansas

Austin E. Williamson
Also licensed in Arkansas

Andy Scholz

Dakota W. Paris

Haley G. Ethridge
Also licensed in Arkansas

Jennifer A. Brodersen

Emily F. Blinzig

Robert A. Grosser

1445 E. Republic Road, Ste 300
Springfield, Missouri 65804
ᴾ417.708.9681
ᶠ417.708.9682
rmsattorneys.com

August 11, 2023

The City of Lowell, Arkansas - Custodian of Records
c/o Elizabeth Estes, City Clerk

The City of Lowell, Arkansas – Mayor
c/o Chris Moore, Mayor

216 N. Lincoln St
Lowell, Arkansas 72745
*Sent via Certified US Mail/Return Receipt Requested*
*and via email to: lestes@lowellarkansas.gov; chris@lowellarkansas.gov*

RE:    Follow-up on Freedom of Information Act Request, Ark. Code Ann. §
25-19-101, *et seq.*
Follow-up on Metro Appliance & More Warehouse Certificate of
Occupancy for 801 Metro Place, Lowell, AR

Dear Ms. Estes and Mayor Moore:

I write to follow up on two separate letters sent to your offices on or about July 20, 2023, on behalf of my client, Metro Appliances & More ("Metro"). The timelines for response to both letters have now passed, and Metro has directed me to file suit against the City of Lowell, and potentially also its officers and agents, in the event I do not hear from you or the City's attorney, if any, with substantive responses to my correspondence by close of business on Thursday, August 17, 2023.

First, with respect to the City Clerk's office, a copy of my initial request for records under the Arkansas Freedom of Information Act, Title 25, Chapter 19 of the Arkansas Code, is enclosed here again. Your office confirmed receipt of the request on July 21, 2023, pursuant to the attached email.

As you should be aware, under the Arkansas Freedom of Information Act (hereinafter "FOIA"), my client has the right to access government records and information upon request. Specifically, FOIA requires you to immediately respond to records requests and, if you do not have responsive information, then you must immediately inform the requesting party that you do not have the information being sought. Similarly, if any of the responsive information is legally exempted from disclosure, then FOIA requires that you immediately inform the requesting party and identify each such exemption. I am sure you are also aware that there are potential misdemeanor and contempt consequences for failing to respond to FOIA requests.

To date, other than the email attached, which is not an adequate response under FOIA, I have received no communication from your office in response to my July 20, 2023, request. By my calculations, your response is now delinquent by 17 days. As such, I request that you expedite the processing of my FOIA request to produce the records not later than Thursday next week.

Second, with respect to the letter sent to Daniel Ellis, City Engineer, on July 20, 2023 (also enclosed herein), neither Mr. Ellis nor anyone on behalf of the City has responded. The deadline by which we requested a response was August 4, 2023. But despite our attempts to engage with the City to seek resolution concerning the subject matter of the letter, the lack of response and continued failure of the City to provide

PRACTICING
EXCELLENCE

the reasonably requested certificate of occupancy to Metro is causing significant delays, financial losses, and unnecessary burdens for Metro.

As a result of the Engineer and the City's failure to respond to our July 20, 2023, letter, I am adding additional requests to my client's initial FOIA request, as follows:

(1) Please provide any, and all, documentation, or evidence, showing, discussing, or relating to why no response from the City Engineer nor from the City Clerk has been made to my office to date, as well as all communication among City employees, not including communication with the City's legal counsel, which discusses or addresses any of my July 20, 2023, correspondence.

(2) Please provide a copy of the Daniel Ellis' personnel and evaluation records for the last twelve (12) months or, if he operates as an independent contractor for the City of Lowell, then all records which refer, relate, or pertain to the evaluation of his performance of duties in the capacity of City Engineer for the last twelve (12) months.

(3) Please provide a copy of any, and all, contracts, agreements, memorandums of understanding, and payments made by, for, or between Crafton, Tull & Associates, Inc. and the City of Lowell in the last twelve (12) months.

(4) Please provide any conflict-of-interest disclosures which concern or relate to Daniel Ellis, including, but not limited to boards or organizations that Mr. Ellis is a part of which have interests or are actively engaging with the City of Lowell for any developments in the last twelve (12) months.

If any of the above requested information is exempted, please identify the information that is exempted and for what reason it is exempted in accordance with Arkansas law.

If I do not receive responsive information from both of your offices by August 17, 2023, then my client will move forward with pursuing all remedies under the law, including filing suit. Be advised that should Metro prevail in such a suit, the City may be ordered to pay all of Metro's attorney's fees and other litigation expenses.

Upon compiling the records requested herein and in my July 20, 2023, FOIA request, please email or mail them to Rooney McBride & Smith, LLC, Attn: Heather Rooney McBride, 1445 E. Republic Road, Suite 300, Springfield, Missouri 65804 or heather@rmsattorneys.com.

Thank you for your immediate attention to this matter. Should you wish to discuss this correspondence further, please feel free to contact me.

Sincerely,

For  Heather Rooney McBride

HRM:SMCM:bjs
Enclosures

c.c: Metro Appliances & More (via email w/o enc)

2



**ATTORNEYS**

Heather Rooney McBride
Also licensed in Arkansas
Also licensed in Oklahoma

Scott A. Smith
Also licensed in Kansas

Austin E. Williamson
Also licensed in Arkansas

Andy Scholz

Dakota W. Paris

Haley G. Ethridge
Also licensed in Arkansas

Jennifer A. Brodersen

Emily F. Blinzig

Robert A. Grosser

1445 E. Republic Road, Ste 300
Springfield, Missouri 65804
P 417.708.9681
F 417.708.9682
rmsattorneys.com

July 20, 2023

The City of Lowell, Arkansas - Custodian of Records
c/o: Elizabeth Estes, City Clerk
216 N. Lincoln St
Lowell, Arkansas 72745
*Sent via Priority U.S. Mail*
*and via email to:* lestes@lowellarkansas.gov

RE:     **Freedom of Information Act Request, Ark. Code Ann. § 25-19-101,**
        *et seq.*

Dear Ms. Estes:

This is a request for records under the Arkansas Freedom of Information Act, Title 25, Chapter 19 of the Arkansas Code, being sent to you on behalf of my client, Metro Builders Supply of Rogers, Inc., which is a incorporated and existing under the laws of the State of Arkansas. I am seeking documents regarding local ordinances and regulations regarding water retention basins or ponds.

Should the cost of this request exceed $500.00, please call our office to confirm the estimated cost before proceeding. Please provide an itemized breakdown of charges. However, I would also like to request a waiver of all fees in that the disclosure of the requested information is in the public interest and will contribute significantly to the public's understanding of whether or not the City of Lowell does or does not discriminate in its issuance of occupancy permits for new development within the City. This information is not being sought for commercial purposes.

The Arkansas Freedom of Information Act requires a response within three (3) business days. If access to the records I am requesting will take longer, please contact me with information about when I can expect copies or the ability to inspect the requested records.

If you deny any or all of this request, please cite each specific exemption you feel justifies the refusal to release the information, and notify me of the appeal procedures available to me under the law.

For purposes of the following request, the following terms are defined as stated below:

- The terms "relates to" or "relating to" or "concerning" or "regarding" means involving, concerning, or in any way touching upon the matter sought.

- The terms "document" or "documents" shall refer to, without limitation, all non-identical copies or versions of any written, photographed, transcribed, recorded, or otherwise produced material however produced or reproduced and whether in draft or final form,

PRACTICING
EXCELLENCE

1

including, but not limited to, telephone logs, letters, handwritten notes, contracts, agreements, licenses, notices, rules, regulations, directives, records or memoranda of telephone or personal conversations, minutes of meetings, purchase orders, receipts, advertising copy, catalogues, agreements, brochures, correspondence, interoffice communications, memoranda, notes, telephone records, transcripts, manuals, guidelines, statements, ledgers, books of account, proposals, prospectuses, offers, orders, bid proposals, working papers, desk calendars, appointment books, diaries, time sheets, logs, telegrams, teletype messages, reports, records, studies, surveys, designs, plans, approvals, working papers, charts, graphs, indices, films, movies, tapes for visual and audio reproduction, recordings or materials similar to any of the foregoing, computer printouts, writings which are now stored by entry into a computer or data system, digital files, or any other data from which intelligence can be perceived, excluding those items that are protected by attorney-client privilege or other valid and enforceable privilege. The term "document" includes all copies of a document which contain additional writing, underlining notes, deletions or any other markings or notations or versions of a document which are otherwise not identical copies of the original.

- The term "Nicolas Place Development" refers to the property commonly known as 801 Metro Pl, Lowell, Arkansas 72745, including, but not limited to, Lots 1, 2, & 3 of the Nicolas Place-Lowell subdivision located in Redevelopment District 1 Lowell, in whole or any portion thereof, including the stormwater retention basin thereof.

Please provide my office with copies of the following from the City of Lowell, Arkansas:

- All ordinances, resolutions, codes, and regulations, codified or enacted or adopted by the City of Lowell, related to the design, construction, or approval of stormwater retention basins or water retention storages, effective on and after January 1, 2015;

- Any and all amendments to ordinances, resolutions, codes or regulations of the City of Lowell relating to stormwater retention basins or water retention storages effective on or after January 1, 2015;

- Any and all City Council Meeting Minutes where ordinances, resolutions, codes, or regulations which relate to stormwater retention basins or water retention storages were enacted or adopted for the period from January 1, 2015, to present;

- Any and all analyses, notes, photographs, drawings, videos, communication, and reports of engineers, inspectors, or other professionals that were paid for, or created by, the City of Lowell, relating to the stormwater retention basin located in the Nicolas Place Development;

- Any and all communications between any elected or appointed official and any City of Lowell engineer or inspector from January 1, 2021, to the present which refer or relate to the Nicolas Place Development, Eoff & Associates, Inc., and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof.

- All notes, memoranda, reports, analyses, drawings, and communications of Richard Stone which refer or relate to the Nicolas Place Development.

2

- All communications between Daniel Ellis and any elected or employed official of the City of Lowell, and between Daniel Ellis and any employee of the City of Lowell, which refer or relate to the Nicolas Place Development, Eoff & Associates, Inc. and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof.

- For the period from January 1, 2022, to present, the portions of the employment file of Richard Stone that refer or relate to the timeframe and/or reason for his change in position with the City of Lowell that became effective in or about 2023.

- All rulings, decisions, and City Council, Board of Adjustment, and other board, commission, or committee meeting minutes, for the period from January 1, 2015, to present, which refer or relate to the Nicolas Place Development and/or Metro Builders Supply, Inc. d/b/a Metro Appliances & More, or any subsidiary or affiliate thereof; and

- All documents, records, notes, memorandums, and communications that refer or relate to the application for, approval, denial, or delay of occupancy permits regarding the Metro warehouse project located at 801 Metro Pl, Lowell, Arkansas 72745, in the Nicolas Place Development.

Upon compiling these records, please send them electronically or mail them to Rooney McBride & Smith, LLC, Attn: Heather Rooney McBride, 1445 E. Republic Road, Suite 300, Springfield, Missouri 65804 or heather@rmsattorneys.com, with a carbon copy to betty@rmsattorneys.com.

Thank you in advance for your prompt attention to and cooperation in this matter. If you have any questions or require any clarification concerning this correspondence, please do not hesitate to contact me.

Sincerely,

Heather Rooney McBride

HRM:SMCM:bjs

c.c.:  Metro Appliances & More (*via email*)

3



**ATTORNEYS**

Heather Rooney McBride
  *Also licensed in Arkansas*
  *Also licensed in Oklahoma*

Scott A. Smith
  *Also licensed in Kansas*

Austin E. Williamson
  *Also licensed in Arkansas*

Andy Scholz

Dakota W. Paris

Haley G. Ethridge
  *Also licensed in Arkansas*

Jennifer A. Brodersen

Emily F. Blinzig

Robert A. Grosser

1445 E. Republic Road, Ste 300
Springfield, Missouri 65804
P417.708.9681
F417.708.9682
rmsattorneys.com

July 20, 2023

Daniel Ellis
Crafton Tull and Associates, Inc.
901 North 47th Street, #400
Rogers, AR 72756
*Sent via US Mail and Certified/Return Receipt Requested*

RE:   **METRO APPLIANCES & MORE WAREHOUSE
        CERTIFICATE OF OCCUPANCY**

Dear Mr. Ellis:

I serve as external general counsel for Metro Builders Supply, Inc. and its subsidiary entities, which do business as Metro Appliances & More (herein collectively referred to as "Metro"), and I write concerning Metro's current project that is awaiting a certificate of occupancy from the City of Lowell (herein the "City"), namely, the warehouse located at 801 Metro Place in Lowell, a commercial building permit for which issued on or about November 29, 2021, and which construction project was substantially complete as of February 2023 (herein the "Warehouse Project").

I have reviewed the history of email correspondence between Metro's contractor, Eoff & Associates, Inc. (herein the "Contractor"), and the City concerning the Warehouse Project, and I understand that rather than communicating with the former engineer/inspector, Richard Stone, who it appears has since been demoted from his position, I should now be communicating directly with you on this matter. Please let me know if the City has legal counsel or another individual to whom I should forward this correspondence.

The historical facts relative to the larger Nicolas Place development in which the Warehouse Project is situated began approximately eight years ago and, as I understand them, are as follows: In the spring of 2015, Presley, Brannon & Associates, Inc., on behalf of Metro, applied for approval of a large-scale development project, known as Nicolas Place. On or about June 1, 2015, the Mayor of Lowell executed the final plat for Nicolas Place, which was thereafter recorded. On or about July 29, 2015, the Arkansas Department of Environmental Quality issued a stormwater construction general permit, number ARR150000 & AR154927, after which construction on the stormwater detention basin that would serve all of the realty in Nicolas Place began (herein the "Basin").

Subsequently, on or about January 27, 2016, the building permit for 801 Metro Place was issued. Then, on or about October 17, 2016, Richard Stone inspected the Basin, and on or about October 25, 2016, Richard Stone approved the Basin structure with no changes. On or about May 5, 2017, the City issued a certificate of occupancy for 801 Metro Place.

Fast-forwarding to the current Warehouse Project, which began in April of 2021, and which is located on just one parcel within the Nicolas Place development, in October 2021, the City requested certain plan revisions relative to the Basin as part of the Contractor's submission of plans to construct the

1

**PRACTICING
EXCELLENCE**

warehouse. As I understand it, the City wanted confirmation from the Engineer (as hereinafter defined) that the Basin would support the Warehouse Project.

Specifically, the City wanted minor modifications in the plans to help ensure maintenance of water quality in the Basin, which modifications, involving the insertion of orifice containing steel into the Basin to block or reduce leakage from orifices, were implemented into the construction plans, and a Stormwater Pollution Prevention Plan for Construction Activity (herein the "SWPPP") was prepared and submitted to the City by the Contractor's engineer, Richard Harshfield, of Vandersluis Engineering (herein the "Engineer"), on or about November 15, 2021. The modifications and SWPPP was subsequently accepted and approved by the City, and a building permit was issued; the requested steel plates were placed over orifices in the Basin in the fall of 2021.

Thereafter, on or about January 27, 2023, the Contractor contacted the City about obtaining a certificate of occupancy for the Warehouse Project, which was nearly complete. Richard Stone advised on or about January 27, 2023, that the following three action items were what remained to be completed in order for a certificate of occupancy to issue; namely, (1) landscaping, plus the height of the fire hydrant might need to be addressed pursuant to the Fire Department's requirements, (2) the west graded area would need to be seeded, and (3) BMP's would need to be removed when the site had been "stabilized".

The Contractor was unable to seed the west area immediately because of weather conditions but the other action items were completed. On or about February 15, 2023, the City informed the Contractor that it would not issue a temporary occupancy permit because the site needed to be "stabilized" (i.e., the sod had to be put down before a certificate of occupancy could issue). The sod has since been incorporated into the Warehouse Project as requested.

I am unclear about the timing of Mr. Stone's demotion, but my understanding is that, due to personnel changes within City administration, as of May 2023, you have now added the following requirements to those listed in January 2023 by Richard Stone in order for a certificate of occupancy to issue for the Warehouse Project:

First, you are requiring that Metro plant five (5) additional trees on the south side of the property. Second, due to some hairline cracking in the concrete of the sidewalk along the private street, Goad Springs Road, you are requiring that Metro replace an entire section of concrete. Please be advised that both of those issues have now been rectified as you verbally instructed such that they should no longer present an impediment to the issuance of a certificate of occupancy.

What remains a problem, however, is the matter of the Basin. As I understand it, initially, you informed the Contractor that no certificate could issue because the Basin is located in an endangered spring cave area and, thus, as constructed, it is in violation of the Federal Endangered Species Act (although no specific provision of the Act that the Basin violated was ever articulated).

However, following your initial assessment, on or about May 22, 2023, you and the Engineer convened a phone conference wherein it was ultimately determined and agreed that the Basin does not actually fall within the endangered spring cave recharge area, rendering that alleged violation, and alleged impediment to a certificate of occupancy, moot.

Nevertheless, it is my understanding you are now claiming that the Basin may violate the Clean Water Act and/or local code (again, without disclosing any specific provisions of the Act or code that

2

are allegedly being violated). Although this information has yet to be articulated in writing by you or any other agent of the City, you are now stating that the City will require the Basin presently to hold approximately six feet of permanent pool of water, which requirement was never mentioned in connection with the Warehouse Project submission of plans, the City's requested revisions thereto, the City's issuance of a construction permit, or at any time thereafter until May 2023.

To accomplish your desired result, my understanding is that significant "reconstruction" will be required to insert a liner in the Basin, which will necessitate pumping out the contents of the Basin for the entirety of the Basin reconstruction period. The Engineer's estimate on cost for this latest City requirement relative to the stormwater detention basin is a minimum of $100,000.

So, due to what simply appears to be a change in personnel, following Metro's completion of the Warehouse Project in the exact fashion that was originally approved by the City in November 2021, after meeting each of the three requirements issued by Mr. Stone to obtain a certificate of occupancy, and despite the fact that Metro has spent millions of dollars on the Nicolas Place development, including but not limited to third turn lane on Goad Springs Road, which alone cost Metro approximately $250,000 to construct[1], you have informed the Contractor that the City will require an additional $100,000 or more in improvements – not to the warehouse itself or the real estate on which it is situated, but to the Basin that serves the entire development – before it will issue even a temporary certificate of occupancy for the Warehouse Project.

This requirement of additional, expensive, construction work has yet to be communicated in writing to the Contractor and, to date, the alleged specific violations of the Clean Water Act and/or local ordinances have not been articulated. Further, this requirement was never mentioned by any agent of the City prior to the start of or during the Warehouse Project construction, nor by you until after the Engineer explained that the Basin was not in fact located within an endangered cave spring area.

The cost of this purportedly required Basin work would, understandably, have been material to Metro's plans for the Warehouse Project, even to the point of being cost-prohibitive. Obviously, a $100,000+ additional cost is a material expense for which Metro should have been given the opportunity to plan had the Basin issue truly been a sticking point. Further, the City should never have issued a building permit when the application and plans (which, notably, did include the City's then-specified improvements to the Basin as set forth in the SWPPP) if it never intended to issue a certificate of occupancy without these much more significant and recently stated improvements to the Basin being made.

From my perspective, this seems to be an after-the-fact attempt to play hardball with a development project from which the City has enjoyed substantial permit application fees, capital

---

[1] The timing of the Goad Springs Road improvement requirement was also delayed, in that the addition of the third lane was announced by the City quite late as a condition precedent to the issuance of a certificate of occupancy for the construction occurring at that time. Also, notably, Kris Sullivan, the Planning and Economic Development Director, has affirmed in writing the benefits of the road widening to the City as paid for by Metro, stating the "improvements will…be a great asset for us[.]" *See* email chain from on or about March 24, 2016. Notwithstanding what now appears to be a *modus operandi* of the City to announce and use as leverage major capital improvement requirements that will benefit the City at Metro's expense before issuing a certificate of occupancy, Metro complied with the requirement and spent significant amount of time and money to widen Goad Springs Road in 2016 so as to comply with the City's demands.

improvements, and revenue for its community, and there are several components of this situation about which I have serious concern, as follows:

First, the Basin, as constructed, was approved by the City initially in January of 2016, and then inspected after construction in October 2016, and, as such, should arguably be grandfathered into any current requests for approvals for construction on individual lots within the Nicolas Place development. *See, e.g., Avalon Cinema Corp., v. Thompson,* 667 F.2d 659, 662-663 (8th Cir. 1981).

Second, the City communicated with the Contractor about the Basin on the front end of the Warehouse Project in the fall of 2021 and, rather than make an issue of what really should have been grandfathered into approval given the history of the development, the Contractor accommodated the relatively minor requests of the City for steel plates in the Basin and also submitted to the City the requested calculations, which were reviewed and accepted by the City, as evidenced by but not limited to the fact that a building permit for the Warehouse Project issued in November 2021.

Third, the Clean Water Act does not apply to the Basin for the reasons recently articulated by the United States Supreme Court in *Sackett v. Env. Prot. Agency,* 143 S.Ct. 1322 (2023) (holding that the Clean Water Act applies only to "'streams, oceans, rivers and lakes' and to adjacent wetlands that are 'indistinguishable' from those bodies of water due to a continuous surface connection.").

Fourth, it is my understanding that you may be basing your requirements for the Basin on a purported change in the City's local code or ordinances, which you have represented to the Contractor and/or Engineer occurred during construction of the Warehouse Project. Assuming there was in fact a local code change during construction, to have provided the Contractor no notice of the alleged change when it occurred and then to demand that Metro spend six figures to accommodate this post-permit requirement before the City will issue a certificate of occupancy could very well constitute a taking of the realty on which the Warehouse Property is situated, for which the City owes Metro compensation. *See, e.g., Nat'l By-Products, Inc. v. City of Little Rock,* 916 S.W.2d 745, 747-49 (Ark. 1996).

In short, the City will have a number of problems attempting to enforce your requirements for the Basin in the event this situation devolves into litigation. Thus, based on the foregoing, Metro's demand to you and the City is as follows: <u>First, not later than 15 days from the date of this letter, the City should issue a temporary certificate of occupancy</u> so that Metro can begin utilizing the warehouse, the construction of which has cost considerable monies and for which Metro and the Contractor have complied with the City's requirements in all respects except for this latest Basin matter.

<u>Second, in not less than 15 days from the date of this letter, you or someone on behalf of the City should provide to me on behalf of Metro, in writing, a detailed explanation</u> of what is purportedly inadequate with respect to the Basin; how it is violative of any federal, state or local law or regulation, with citations to applicable provisions, and when said law or regulation went into effect; why it is that the City approved a building permit in 2021 for the Warehouse Project without this reconstruction to the Basin being included in the plans; why the City never informed the Contractor of this requirement until May 2023; and why it is that the issuance of a permanent certificate of occupancy for the Warehouse Project is suddenly contingent upon a requirement of reconstruction for the Basin, which serves not just the warehouse realty but also every other lot situated in the Nicolas Place development.

Metro wants to do what it can to cooperate with the City in resolving this matter, but you should be aware that Metro has also directed me to file suit in the event this matter cannot be resolved amicably; Metro would be claiming damages for the amounts the City has been unjustly enriched

relative to the Nicolas Place development as a whole, for the value of the realty on which the Warehouse Project is situated, and for lost profits resulting from this untenable delay in the issuance of a certificate of occupancy.

I am confident the City understands that, with respect to matters of contract and proprietary functions, intentional torts, and certainly constitutional violations, it does not have complete municipal, or sovereign, immunity. *See, e.g., Ark. Val. Compress & Warehouse Co. v. Morgan*, 229 S.W.2d 140-41 (Ark. 1950). Thus, it would seem to be in the best interests of all parties to work together to resolve this situation in a fashion that achieves the reasonable goals and requirements of the City without having to resort to what undoubtedly would be protracted and expensive litigation.

I look forward to hearing from you or someone else on behalf of the City at your earliest convenience and not later than the timeframe outlined herein. I appreciate your immediate attention to this matter.

Sincerely,

Heather Rooney McBride

HRM:bjs

CC:     Mr. Chris Moore, *via email and US Mail*
        Ms. Melanie Houston, *via email*
        Ms. Darcy Richard, *via email*
        Ms. Karen Davis, *via email and US Mail*
        Metro Appliances & More, *via email*
        Eoff and Associates, Inc., *via email*
        Richard Harshfield, *via email*

## Betty Salmon

**From:** Melanie Houston <mhouston@lowellarkansas.gov>
**Sent:** Friday, July 21, 2023 9:37 AM
**To:** Betty Salmon
**Subject:** RE: Freedom of Information Act Request, Ark. Code Ann. § 25-19-101, et seq.

Thank you Ms. Salmon, we will get this taken care of.
Sincerely,
Melanie Houston

THE CITY OF
**LOWELL**
ARKANSAS

**Melanie Houston** / Assistant to the Mayor
mhouston@lowellarkansas.gov

**City of Lowell** Office: 479.770.2185 ext 223 / Fax: 479.770.2106
216 N Lincoln St, Lowell, AR 72745
http://www.lowellarkansas.gov



This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. City of Lowell is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the City of Lowell.

Disclaimer This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. Thank you, we appreciate your cooperation.

**From:** Betty Salmon <betty@rmsattorneys.com>
**Sent:** Friday, July 21, 2023 9:31 AM
**To:** Melanie Houston <mhouston@lowellarkansas.gov>
**Cc:** Heather Rooney McBride <heather@rmsattorneys.com>
**Subject:** RE: Freedom of Information Act Request, Ark. Code Ann. § 25-19-101, et seq.

Good Morning Ms. Houston,

Please see the FOIA request sent to the City Clerk yesterday per your request below.  We appreciate your willingness to assist us in this matter.

Thank you,



*Betty Salmon*

Paralegal
Rooney McBride & Smith, LLC
1445 E. Republic Rd., Suite 300
Springfield, MO  65804
Phone:  417-708-9681 x210
Fax:  417-708-9682
www.rmsattorneys.com

**This communication, together with any attachments hereto or links contained herein, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments hereto or links herein, from your system.**

**From:** Melanie Houston <mhouston@lowellarkansas.gov>
**Sent:** Friday, July 21, 2023 7:53 AM
**To:** Betty Salmon <betty@rmsattorneys.com>
**Subject:** FW: Freedom of Information Act Request, Ark. Code Ann. § 25-19-101, et seq.

Dear Ms. Salmon,
Our City Clerk received your FOIA request but unfortunately, she was unable to forward it on.  If you could send the request to my email, I will make sure our City Attorney receives it and replies in a timely manner.
Sincerely,
Melanie Houston

THE CITY OF
**LOWELL**
ARKANSAS

**Melanie Houston** / Assistant to the Mayor
mhouston@lowellarkansas.gov

City of Lowell Office: 479.770.2185 ext 223 / Fax: 479.770.2106
216 N Lincoln St, Lowell, AR 72745
http://www.lowellarkansas.gov



This e-mail message may contain confidential or legally privileged information and is intended only for the use of the intended recipient(s). Any unauthorized disclosure, dissemination, distribution, copying or the taking of any action in reliance on the information herein is prohibited. E-mails are not secure and cannot be guaranteed to be error free as they can be intercepted, amended, or contain viruses. Anyone who communicates with us by e-mail is deemed to have accepted these risks. City of Lowell is not responsible for errors or omissions in this message and denies any responsibility for any damage arising from the use of e-mail. Any opinion and other statement contained in this message and any attachment are solely those of the author and do not necessarily represent those of the City of Lowell.

Disclaimer This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. Thank you, we appreciate your cooperation.

**From:** Elizabeth Estes <lestes@lowellarkansas.gov>
**Sent:** Thursday, July 20, 2023 7:30 PM
**To:** Melanie Houston <mhouston@lowellarkansas.gov>; Tom Kieklak <tkieklak@arkansaslaw.com>; Chris Moore <chris@lowellarkansas.gov>
**Subject:** Fwd: Freedom of Information Act Request, Ark. Code Ann. § 25-19-101, et seq.

This is an FOIA request from Attorney Heather Rooney McBride. A separate document is also included.

Sincerely,

Liz Estes
City Clerk

Sent from my iPhone

Begin forwarded message:

> **From:** Betty Salmon <betty@rmsattorneys.com>
> **Date:** July 20, 2023 at 4:40:54 PM CDT
> **To:** Elizabeth Estes <lestes@lowellarkansas.gov>
> **Cc:** Heather Rooney McBride <heather@rmsattorneys.com>
> **Subject: Freedom of Information Act Request, Ark. Code Ann. § 25-19-101, et seq.**
>
> Good Afternoon,
>
> Please see the attached correspondence from Attorney Heather Rooney McBride in regard to the above referenced matter.
>
> Should you have any questions please do not hesitate to contact our office.
>
> Thank You,
>
> *Betty Salmon*
> Paralegal
> Rooney McBride & Smith, LLC
> 1445 E. Republic Rd., Suite 300
> Springfield, MO 65804
> Phone: 417-708-9681 x210
> Fax: 417-708-9682
> www.rmsattorneys.com

**This communication, together with any attachments hereto or links contained herein, is for the sole use of the intended recipient(s) and may contain information that is confidential or legally protected. If you are not the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by return e-mail message and delete the original and all copies of the communication, along with any attachments hereto or links herein, from your system.**

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.